## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

ROBERT A. MARTIN,

        Plaintiff,

v.                                CIVIL ACTION NO.  5:07-cv-00123

SALLIE MAE, INC., and
UNITED STATES ARMY,

        Defendants.

### MEMORANDUM OPINION

The instant civil action involves a dispute over the repayment of a student loan.  Before the Court is the Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(1) [Docket 5] of Defendant United States Army (Army) and the Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6) [Docket 7] of  Defendant Sallie Mae, Inc. (Sallie Mae).  For the reasons stated below, Defendants' motions are **GRANTED**.

### I.  BACKGROUND

On February 27, 2007, Plaintiff brought this action against the Army and Sallie Mae.[1] Plaintiff alleges that he attended the West Virginia University College of Law starting in August of 1979.  (Docket 1 ¶ 10.)  During his schooling, Plaintiff accepted two student loans from Sallie Mae for the total amount of $9,350.00.  (*Id*. ¶ 11.)  In 1983, Plaintiff enlisted with the Army where he

---

[1]  Prior to filing this case, Plaintiff brought suit in the Circuit Court of Raleigh County, West Virginia against Sallie Mae in December 2005.  Thereafter, Plaintiff amended the complaint to add the Army, and the action was removed to this Court.  For jurisdictional reasons, the parties voluntarily agreed to dismiss that case without prejudice.

served until 1987.  (*Id.* ¶ 12.)

As a part of his compensation package, the Army allegedly agreed to pay Plaintiff's student loan obligation.  (*Id.*)  Evidently, however, the Army did not immediately repay the loan, and on August 11, 1995, Plaintiff signed a standard agreement with Sallie Mae (1995 Agreement) that calculated his student loan obligation at $21,034.00 -- the amount of his original loan obligation plus interest, accrued interest, and late penalties.  (*Id.* ¶¶ 13, 16.)  Thereafter, on June 14, 1999, the Army paid Sallie Mae the amount of the original loan principal, $9,350.00, but did not pay any accrued interest or late penalties.  (*Id.* ¶ 15.)[2]  Several years later, on April 9, 2004, Sallie Mae sent Plaintiff a letter informing him that the Higher Education Act of 1965 and the Federal Education Loan Program allowed it to continue to contact him directly in efforts to collect the accrued interest and late penalties, irrespective of the fact that he had retained an attorney.  (*Id.* ¶ 18.)

Then, on October 10, 2005, Sallie Mae sent Plaintiff a payment schedule alleging an unpaid principal balance of $13,757.13 plus accrued interest of $142.37 for a total principal to be paid of $13,899.50, with the estimated amount of interest to be paid during the repayment period of $6,420.54, for a total repayment of $20,320.04.  (*Id.* ¶ 23.)  Plaintiff was to begin monthly payments of $146.19 on December 22, 2005, and continue to make payments until June 22, 2017.  (*Id.*)

Based on these factual allegations, Plaintiff baldly asserts that the conduct of Sallie Mae and the Army "violates State and Federal Law, Regulations and Statutes." (*Id.* ¶ 26.)  However, Plaintiff

---

[2]  Plaintiff also alleges that when the Army paid Sallie Mae the amount of the original loan, the Internal Revenue Service considered the payment earned income and requested income taxes on the amount, causing Plaintiff to file a complaint in "US Tax Court, incurring attorney fees and litigation costs . . . [and] [t]he case was decided in Plaintiff's favor based upon the contention that Defendant, US Army, was responsible and obligated to make such student loan repayment."  (Docket 1 ¶ 17.)

2

fails to cite any specific statutes that provide him with a cause of action against either defendant.[3] In construing Plaintiff's complaint, it seems he alleges a contractual claim against the Army for its failure "to honor its obligation to timely repay the loan . . . ." (*Id.* ¶ 4.)  Plaintiff claims that the Army "defaulted in its contractual obligation upon Plaintiff fulfilling enlistment requirements and being honorably discharged . . . ." (*Id.* ¶ 13.)  Further, near the end of his complaint, he refers to the Army and Sallie Mae collectively as Defendants, and alleges that "Defendants [sic] conduct constitutes negligence and tort against Plaintiff . . . ." (*Id.* ¶ 27.)[4]  Accordingly, Plaintiff's complaint can be construed as alleging a contractual and negligence claim against the Army.

With respect to Sallie Mae, Plaintiff alleges that its attempt to collect on the loan violates "State and Federal Statutes", but again, he does not cite any statutes.  He alleges that Sallie Mae contacted Plaintiff on April 9, 2004, in person and in writing, to collect his debt even after he retained an attorney, and that these attempts violated federal and state law.  (*Id.* ¶¶ 18, 22, and 24.)  Further, he alleges that Sallie Mae acted in an improper manner to adversely affect his credit rating.  (*Id.* ¶ 29.) Next, Plaintiff alleges a cause of action against Sallie Mae because it did not contact the Army to collect his debt directly from the Army, and he requests an order stating that Plaintiff does not have to pay the interest or late fees because Sallie Mae waived any right to such payment by accepting payment of $9,350.00 from the Army.  (*Id.* ¶¶ 20, 21, and 25.)  Third, as was the case with the Army, Plaintiff alleges that Sallie Mae's "conduct constitutes negligence and tort against Plaintiff[,]" and

---

[3] The Court notes that this complaint was drafted by counsel, and therefore, the Court is not required to hold it to a less stringent standard.  *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978) ("liberal construction of pleadings is particularly appropriate where . . . there is a *Pro se* complaint raising civil rights issues").

[4] The Court is, at best, left to speculate as to what is meant by "tort."

that its conduct was "in breach of a contract . . . ." (*Id.* ¶¶ 25, 27.)  Finally, Plaintiff alleges that Sallie Mae's conduct with respect to attempting to collect his debt was willful, intentional, reckless, malicious, harassment, and adversely affected his credit rating.  (*Id.* ¶¶ 28, 29.)  Because Plaintiff cites no statutes and because he does not organize his complaint in such a manner as to delineate his causes of action against each defendant, the Court liberally construes his allegations against Sallie Mae as claims for: (1) Improper Debt Collection and Reporting in violation of federal law, specifically the Higher Education Act of 1965 (HEA), 20 U.S.C. §§ 1001-1155, the Federal Family Education Loan Program (FFELP), 20 U.S.C. §§ 1071-87, Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1601-1700, and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-92p, and in violation of state law, specifically the West Virginia Consumer Credit Protection Act (WVCCPA), §§ 46A-1-101 to 46A-8-102, and a claim for Intentional Infliction of Emotional Distress; (2) Breach of Contract and Injunctive Relief; and (3) Negligence.[5]

Both Defendants filed motions to dismiss Plaintiff's claims.  The Army's motion to dismiss was filed pursuant to Fed. R. Civ. P. 12(b)(1), while Sallie Mae's motion to dismiss was filed under Fed. R. Civ. P. 12(b)(6).  The Court will address each separately.

## II. DISCUSSION

### A. The Army's Motion to Dismiss Pursuant to Rule 12(b)(1)

#### (1)   Applicable Standard

"'It is a fundamental precept that federal courts are courts of limited jurisdiction,' constrained to exercise only authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking*, 147 F.3d 347, 352 (4th Cir. 1998) (citations omitted).

---

[5]  Furthermore, Plaintiff's briefing was unhelpful to the resolution of the issues herein.

4

Federal courts cannot assume jurisdiction exists over a case; plaintiffs must specifically plead and prove it in their complaint. *Norton v. Larney*, 266 U.S. 511, 515-16 (1925).   On a motion to dismiss pursuant to Rule 12(b)(1), the party asserting jurisdiction has the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991); *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002) ("In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").   "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond,* 945 F.2d at 768 (citation omitted).   The Court may consider evidence by affidavit, depositions, live testimony or declarations complying with 28 U.S.C. § 1746. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).   Unlike the procedure in a Rule 12(b)(6) motion, in which the fact finder is presumed to retain the truth-finding role, a court considering a Rule 12(b)(1) motion may weigh the evidence to determine whether it has subject matter jurisdiction. *Id.*   Importantly, "[t]he district court should apply the standard applicable to a motion for summary judgment, under which *the nonmoving party must set forth specific facts beyond the pleadings* to show that a genuine issue of material fact exists." *Id.* (citations omitted) (emphasis added).

   *(2) Analysis*

  In the instant case, Plaintiff bears the burden of pleading and proving this Court's jurisdiction by a preponderance of the evidence. *See Luckett*, 290 F.3d at 497.   To that end, he states that "the Army is a proper Defendant with venue and jurisdiction." (Docket 1 ¶ 5.)   Plaintiff alleges that

"[v]enue and jurisdiction are proper under appropriate federal statutes and Diversity of Citizenship of the parties." (*Id.*) Beyond these broad statements, Plaintiff provides no factual, legal, or evidentiary support for his assertion that this Court has jurisdiction over his claims against the Army. Consequently, he fails to meet his burden.

Specifically, this Court does not have jurisdiction for two reasons. First, a claim brought by a citizen of the United States against the United States does not satisfy diversity of citizenship. *See* 28 U.S.C. § 1332(a) (granting jurisdiction over controversies between citizens of *different* states); *Brumfield v. Nat'l Flood Ins. Program,* 492 F. Supp. 1043, 1044 (M.D. La. 1980) ("Since the United States is not a citizen of any state within the meaning of the diversity jurisdiction statute . . . plaintiffs' suit against the United States based on diversity jurisdiction is improper.") (citing *Koppers Co. v. Garling and Langlois*, 594 F.2d 1094 (6th Cir. 1979); *United States v. Dry Dock Savings Inst.*, 149 F.2d 917 (2d Cir. 1945); *Darling v. United States*, 352 F. Supp. 565 (E.D. Cal. 1972); *Jizmerjian v. Dep't of Air Force*, 457 F. Supp. 820 (D.S.C. 1978)). Second, Plaintiff fails to specify any federal statute that waives the government's sovereign immunity and grants this Court jurisdiction under 28 U.S.C. § 1331.[6]

### a. *Jurisdiction Over Plaintiff's Contract Claims*

Plaintiff's contract claims against the Army are barred by the Tucker Act because the Act states that the Court of Federal Claims has exclusive jurisdiction over non-tort claims brought against the United States that exceed $10,000. *See* 28 U.S.C. §§ 1346(a)(2), 1491.

---

[6] Plaintiff's Complaint alleges two theories of recovery against the Army: (1) breach of contract; and (2) negligence. Two federal statutory schemes govern recovery under these theories: the Tucker Act, 28 U.S.C. §§ 1346(a), 1491, and the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80.

Plaintiff claims that his damages consist of his contractual loan obligation and any interest or late penalties resulting from the Army's late payment of his loan obligation, attorney's fees, costs, mental anxiety compensation, physical anxiety compensation, consequential damages, and punitive damages. However, the Army already paid Sallie Mae $9,350.00 of Plaintiff's debt on June 14, 1999, and thus, Plaintiff may not now recover that amount because his recovery of an amount already paid would be a windfall. Nonetheless, Plaintiff's contract claim is for the unpaid accrued interest and late penalties, which according to the complaint amounted to a total of $13,899.50 as of October 10, 2005. (*See* Docket 1 ¶ 23-24.) Accordingly, because the requested damages exceed $10,000, this Court is without jurisdiction to hear Plaintiff's contract claim against the Army. This Court does, however, have the authority to transfer Plaintiff's claim to the Court of Federal Claims, but any transfer is unwarranted because Plaintiff's contract claim is time-barred. *See* 28 U.S.C. § 1631.[7]

Plaintiff's contract claim arises under the Tucker Act because he alleged that a contract existed between him and the Army. The Act states, in pertinent part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, *or upon any express or implied contract with the United States*, or for liquidated or unliquidated damages

---

[7] This statute provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

in cases not sounding in tort. For the purpose of this paragraph, *an express or implied contract with the Army* and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration *shall be considered an express or implied contract with the United States*.

28 U.S.C. § 1491(a)(1)(emphasis added).  In order to bring a valid contract claim, Plaintiff was required to bypass the procedural limitations on the United States' waiver of sovereign immunity. "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."  28 U.S.C. § 2501. This statute is an express limitation on the United States' waiver of sovereign immunity.  *Soriano v. United States*, 352 U.S. 270, 276 (1957).  Thus, if Plaintiff failed to file suit within the statutory time period, the Court of Federal Claims also lacks jurisdiction over his claim and any transfer would be futile, and not in the interest of justice.  *See McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330, 334 (4th Cir. 2001) (stating that 28 U.S.C. § 1631 authorizes a court to transfer if (1) to do so would be "in the interest of justice" and (2) the case "could have been brought" in the transferee court when it was initially filed in the transferring court).

Therefore, to determine whether the Court should transfer Plaintiff's contract claim, it must determine when the statute of limitations began to accrue.  "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Jersey Heights Neighborhood Ass'n v. Glendenning*, 174 F.3d 180, 187 (4th Cir. 1999) (quoting *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc)).  A claim first accrues "when all the events have occurred which fix liability of the Government and entitle the claimant to institute an action." *Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d. 1449, 1455 (Fed Cir. 1997) (citing *Brighton Vill. Assocs. v. United*

*States*, 52 F.3d 1056, 1060 (Fed Cir. 1995)).  In *United States v. Kubrick*, 444 U.S. 111, 122-24

(1979), "the [Supreme] Court held that for a cause of action to accrue, it is critical that the plaintiff

know that he has been hurt and who inflicted the injury." *Nasim*, 64 F.3d at 955.

According to Plaintiff's complaint, the Army "defaulted in its contractual obligation to pay

Plaintiff's loan obligation upon Plaintiff fulfilling enlistment requirements and being honorably

discharged from the US Army." (Docket 1 ¶ 13.)  Therefore, all the events that fixed liability on the

Army existed upon Plaintiff's discharge from military service, and he was entitled to bring suit

regarding his student loan payments in 1987 when the Army did not pay Sallie Mae upon fulfilling

his enlistment requirements.  According to Exhibit A of the Army's motion to dismiss, it attempted

to contact Plaintiff on several occasions before closing his file in 1987 in order to obtain the necessary

verification for his loan repayment.  (Docket 5-2 at 1.)  At that point, Plaintiff had all the information

necessary to pursue a claim against the Army: he knew that he had been injured and who inflicted the

injury.  *See Nasim*, 64 F.3d at 955.[8]   Plaintiff's cause of action accordingly expired in 1993.  Because

_____

[8] Plaintiff argues that he did not know about the Army's failure to pay until he signed the 1995
Agreement with Sallie Mae whereby he agreed that he owed a total of $21,034.00 on his student
loans.  Plaintiff asserts that because the Army paid off the original amount of debt several years later
in 1999, he "hoped" that the Army would also pay off the interest and penalties.  Even if the Court
were to accept Plaintiff's argument, and construe the Army's promise to pay the original debt
amount as a period of equitable tolling, which it declines to do, the statute of limitations would have
begun to run once Plaintiff found out that the Army did not pay the interest and penalties on the
loan, which would have been June 14, 1999, especially since it wrote Plaintiff a letter prior to
making the payment that said: "Public Law precludes the authorization of payments toward interest
and the reimbursement of payments made."  (Docket 5-2 at 1.); *see also Shipley v. U.S. Postal Serv*.,
286 F. Supp. 2d 657, 662 (W.D. Va. 2003) ("As a general rule, Federal courts must apply equitable
exceptions to statutory periods of limitation sparingly.")  Thus, Plaintiff's cause of action would
have expired, at the latest, no later than June 13, 2005.  Because Plaintiff's initial state court lawsuit
was not filed until December 13, 2005, the statute of limitations would have expired even under
Plaintiff's own argument, and his breach of contract claim against the Army would be untimely.

Plaintiff did not file suit against the Army in the Circuit Court of Raleigh County until December 13, 2005, his claim is time-barred.

Plaintiff argues that the statute of limitations should not preclude his contract claim.  He alleges that he "erroneously believed that [the Army] had paid [Sallie Mae] until receiving written notification from [Sallie Mae] in 1995." (Docket 12 at 3.)  He further argues that the statute of limitations should not have begun to accrue until he filed this lawsuit and gained access to his file.  The Court rejects Plaintiff's argument.  The premise of the *Jersey Heights*' accrual standard is reasonable inquiry, not actual knowledge.  Thus, Plaintiff does not allege any facts that would support a finding that a reasonable inquiry would not have discovered that his loan was not paid in 1987, when all liability fixing events had transpired.[9]  Without any legal support for his argument, and without any evidence to support a basis for tolling the statute of limitations, Plaintiff fails to meet his burden, and the Court finds that the statute of limitations bars Plaintiff's contract claim against the Army.  Consequently, this Court declines to transfer Plaintiff's case to the United States Federal Court of Claims because any transfer would not be in the interest of justice and would be futile.  *See* 28 U.S.C. § 1631; *Jackson v. United States*, 10 Cl. Ct. 691, 695 (1986) (refusing to transfer a case where the statute of limitations had run because such a transfer would be a "futile act")).

### b. Jurisdiction Over Plaintiff's Tort Claims

Based on Plaintiff's position in his response to the Army's motion to dismiss, it seems Plaintiff has abandoned his tort claim against the Army.  (*See* Docket 12-2 at 5 ("If the US Army is correct that

---

[9] Again, even if the Court were to find that reasonable inquiry would not have revealed that his loan had not been paid, his cause of action would have expired on June 13, 2005, because he admits that he received *actual* notice on June 14, 1999 that the Army would not pay for his accrued interest and late penalties.  *See supra* n.8.

10

its only liability is a potential breach of its payment obligation, then any Tort Claim would be against Sallie Mae, Inc.").)  Notwithstanding this statement, the Court also finds that because Plaintiff has not put forth any evidence in support of his opposition to the Army's motion to dismiss for failure to present his claim to the appropriate federal agency within two years, the Court also lacks jurisdiction over Plaintiff's tort claims under the FTCA.

"A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."  28 U.S.C. § 2401(b). The FTCA requires a person suing the federal government to "have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). This requirement is jurisdictional and cannot be waived.  *See Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994).  The appropriate procedure for administrative presentment is set forth in 28 C.F.R. § 14.2(a), and requires a claimant to execute:

> [A] Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

As the Fourth Circuit explained in *Ahmed*, "Section 2675(a) . . . and 28 C.F.R. § 14.2(a) require two elements for sufficient presentment of a claim to an agency: 1) written notice sufficient to cause the agency to investigate, and 2) a sum-certain value on the claim."  *Id*. at 517 (citation omitted).  Importantly, a motion to dismiss should be granted where the record contains no evidence that the plaintiff sufficiently presented the agency with the proper written notification.  *See generally id*.; *Richmond*, 945 F.2d at 768 (burden on the party asserting jurisdiction and that party "must set forth specific facts beyond the pleadings"); *Luckett*, 290 F.3d at 497 (burden is by a preponderance of the evidence).

Here, the record does not reveal that Plaintiff filed a Standard Form 95 or any other written document apprising the Army of his FTCA claim within two years of when his claim accrued. Therefore, he failed to meet his burden of proving that he satisfied the FTCA's non-waiveable jurisdictional requirements, and, as a result, this Court lacks jurisdiction over Plaintiff's tort claims against the Army.  The only exhibits in the record are a letter from the Army to Plaintiff's counsel acknowledging an inquiry by Plaintiff on December 10, 1997 concerning the repayment of Plaintiff's loan and a Military Pay Voucher dated June 8, 1999.  (*See* Docket 5-2, Ex. A-B.)  Thus, even if Plaintiff's December 10, 1997 letter to the Army satisfied all the requirements of 28 C.F.R. § 14.2(a) and qualified as another form of "written notification", which the Court has no way of establishing, Plaintiff's claim would still have not been timely presented to the proper agency because any potential claim accrued in 1987.

Accordingly, because this Court does not have jurisdiction over either Plaintiff's contract or tort claim against the Army, the Army's Motion to Dismiss [Docket 5] is **GRANTED**.

B. Sallie Mae's Motion to Dismiss Pursuant to Rule 12(b)(6)

(1)    Applicable Standard

Pursuant to Fed. R. Civ. P. 8(a), a plaintiff's complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Nevertheless, "[e]ven under the liberal standards of the Federal Rules of Civil Procedure . . . a plaintiff 'must at least set forth enough details so as to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery.'" *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998) (quoting *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir. 1990)).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007).  Therefore, a motion to dismiss under Rule 12(b)(6) should be granted only if after accepting all well-pleaded allegations contained in plaintiffs' complaint as true, he fails to allege enough facts to state a claim that is plausible on its face.  *Id.* at 1974.  "Factual allegations must be enough to raise a right to relief above the speculative level[,]" and if a plaintiff does not "nudge" his claim "across the line from conceivable to plausible", then the complaint should be dismissed.  *Id.* at 1965, 1974.  "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition."  *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001) (citing *DM Research v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)).

> (2)  *Analysis*

As mentioned above, because Plaintiff failed to do so, the Court has specified the potential causes of action that he is most likely asserting from the facts set forth in his complaint.  Therefore, the Court will address each in turn and determine whether, in viewing the allegations in the light most favorable to Plaintiff, he has alleged any set of facts upon which relief can be granted.[10]

---

[10] Plaintiff alleges that jurisdiction is proper for his claims against Sallie Mae because his cause of action is brought under "appropriate federal statutes and Diversity of Citizenship of the parties." (Docket 1 ¶ 4.)  "A complaint must state on its face the grounds for a federal court's jurisdiction, irrespective of whether it is a case of diversity jurisdiction, federal question jurisdiction or both." *Martin Sales & Processing, Inc. v. W. Va. Dep't of Energy*, 815 F. Supp. 940, 944 (S.D. W. Va. 1993) (citing *Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968)).  A plaintiff must allege "sufficient facts" to prove a district court's jurisdiction.  *Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir. 1999).  As discussed *infra*, Plaintiff alleges sufficient facts to establish federal question jurisdiction because his cause of action against Sallie Mae arises under several federal statutes.  *See* 28 U.S.C. § 1331.  However, because all of his federal claims are dismissed, the Court must have either diversity jurisdiction or supplemental jurisdiction over his state claims.  Even if there was not federal question jurisdiction, the Court could have diversity jurisdiction if two elements are met: (1) diversity of the parties and (2) amount in controversy.  *See* 28 U.S.C. § 1332; *Gambelli v. United*

a.    *Improper Debt Collection and Reporting in Violation of Federal and State Law*

Plaintiff alleges that Sallie Mae engaged in improper collection methods and that Sallie Mae should have directly contacted the Army regarding his loan obligation, but failed to do so.  However, Plaintiff's complaint consists solely of bald assertions, such as "[Sallie Mae's] collection attempt violates State and Federal Statutes." (Docket 1 ¶ 18.)  In the complaint, he does not specify any

---

*States*, 904 F. Supp. 494, 496 (E.D. Va.1995).  Diversity exists between citizens of different states only where no party shares common citizenship with any party on the other side.  *Mayes v. Rapport*, 198 F.3d 457, 460 (4th Cir. 1999).  Where a plaintiff does not meet the burden of establishing diversity jurisdiction, a court may grant the plaintiff leave to amend the complaint.  *See* Fed. R. Civ. P. 15(a); *Clarke v. Whitney*, 934 F. Supp. 148, 151 (E.D. Pa. 1996) ("When a complaint's allegations are defective but it appears that they can be cured, courts should not dismiss, but should grant leave to amend to cure the defects.").  Federal courts typically grant such leave, but "it is well established that leave to amend should be denied where amendment of the complaint would be futile." *Martin Sales*, 815 F. Supp. at 944 (citations omitted).  Plaintiff alleges that he "is a bonafide resident of the state of West Virginia . . . ." (Docket 1 ¶ 7.)  Further, he states that Sallie Mae "is a Corporation licensed to do business in the State of West Virginia." (*Id.* ¶ 8.)  "[A] corporation's citizenship derives, for diversity jurisdiction purposes, from its State of incorporation and principal place of business." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006) (citing 28 U.S.C. § 1332(c)(1)).  Although Plaintiff alleges that he is a citizen of West Virginia, he does not allege Sallie Mae's citizenship by stating its place of incorporation and its principal place of business.  Thus, Plaintiff has not met his burden of establishing diversity jurisdiction.  Regardless, an amendment to the complaint would likely cure this defect because in at least one other diversity case, the complaint alleged and the court noted that Sallie Mae was incorporated in Delaware and had its principal place of business in Virginia.  *See Schultz v. Sallie Mae, Inc.*, No. 99-C-3613, 1999 U.S. Dist. LEXIS 16870, at *2 (N.D. Ill. Oct. 28, 1999) ("Sallie Mae, Inc. , a Delaware corporation principally located in Virginia . . . .").  However, an amendment to correct the lack of diversity would be futile because his state law claims have no merit.  Accordingly, even though the Court lacks diversity jurisdiction, and even though Plaintiff's federal law claims are dismissed, pursuant to 28 U.S.C. § 1367(a), in the interests of convenience and fairness to the parties, and judicial economy, because of the late stage of the litigation, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims and decide them on the merits.  *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) ("Supplemental jurisdiction . . . allows parties to append state law claims over which federal courts would otherwise lack jurisdiction, so long as they form part of the same case or controversy as the federal claims."); *see also Boyce v. Fernandes*, 77 F.3d 946, 951 (7th Cir. 1996) ("The normal practice of course is to relinquish jurisdiction over a supplemental claim when the main claim is dismissed before trial, but if the supplemental claim is easily shown to have no possible merit, dismissing it on the merits is a time saver for everybody.").

statutes or common law doctrines that support his claims.  Interestingly, in his response to Sallie Mae's motion to dismiss, Plaintiff acknowledges Sallie Mae's argument that the federal regulations issued by the Department of Education permit its collection attempts.  Unconvincingly, however, he responds: "Plaintiff, [sic] disagrees." (Docket 13 at 5.)  In support of his dissent, he provides no contrary case law, applicable statutes, regulations, or analysis.

Plaintiff's complaint mentions the HEA and the FFELP in a general context by acknowledging a letter sent by Sallie Mae to Plaintiff in April 2004 whereby it stated that these laws permitted Sallie Mae to continue to contact him.  Although he did not use specific language to allege causes of action under these statutes, even if he had, they would fail because the FFELP, 20 U.S.C. §§ 1071-1087, is a federally-sponsored program that is part of the HEA, 20 U.S.C. §§ 1070-1155, and the HEA does not grant individuals a private right of action to enforce violations of its statutory scheme.  20 U.S.C. § 1082(a)(2); *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1221 (11th Cir. 2002) (listing cases that found no express private right of action under the HEA); *Labickas v. Ark. State Univ.*, 78 F.3d 333, 334 (8th Cir. 1996) ("We conclude that no private right of action is implied under the HEA for student borrowers."); *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ("There is no express right of action under the HEA except for suits brought by or against the Secretary of Education."); *see also College Loan Corp. v. SLM Corp.*, 396 F.3d 588 (4th Cir. 2005) (noting that "the courts have consistently held that no private right of action is available for violation of the HEA").  In fact, the HEA permits lending agencies to engage in the debt collection practices about which Plaintiff complains.  *See* 34 C.F.R. § 682.411 (providing guidance for lender due diligence when collecting on loans obligations).  Accordingly, there is no basis for which Plaintiff can recover under the HEA or the FFELP.

15

Not only does the HEA not provide Plaintiff with a private right of action, but it also preempts any state cause of action that conflicts with it. "The provisions of this section preempt any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the requirements or frustrate the purposes of this section." 34 C.F.R. § 682.411(o).

Several courts hold that the HEA preempts *any* state causes of action related to student loan claims. *See, e.g.*, *Pirouzian v. SLM Corp.,* 396 F. Supp. 2d 1124*,* 1129 (S.D. Cal. 2005) (citing *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1263 (9th Cir. 1996) (holding that the HEA preempts all state law that regulates pre-litigation collection activities)); *Seals v. Nat'l Student Loan Program*, No. CA-02-101-5, 2004 WL 3314948, at *3,6 (N.D. W. Va. Aug. 16, 2004) (holding, under *Brannan*, the HEA preempts a plaintiff's claim for improper collection practices under the West Virginia Consumer Credit Protection Act, § 46A-2-125), *aff'd*, 124 F. App'x 182 (4th Cir. 2005) (per curiam).

However, in *McMomas v. Fin. Collection Agencies*, 2:96-0431, 1997 U.S. Dist. LEXIS 2725 (S.D. W. Va. Mar. 7, 1997), Chief Judge Haden refused to follow the majority opinion in *Brannan*, and held that the HEA preempts only those state debt collection provisions that specifically conflict with the federal scheme. The Court reasoned that given the applicable regulations, agency interpretation of the regulations, and the congressional intent in enacting the HEA, a plaintiff's causes of action under the WVCCPA were not facially inconsistent with federal regulations because the lender could have complied with both. *Id.* at *3-11. For example, in *McComas*, lender's agents telephoned the plaintiff and identified themselves as agents of the Justice Department, demanded immediate full payment and threatened a 42% collection fee, refused requests for a reasonable payment schedule, and threatened to garnish her wages. *Id*. at *2. The Court found that permitting

16

state law claims based on this conduct would not frustrate or inhibit the collection efforts allowed by the federal regulations. Thus, only the causes of action based on conduct that is permitted by the federal regulations, but prohibited by state law, would be preempted. *See id.* at *12 ("The HEA and its regulations require due diligence of debt collectors; they do not authorize fear-inducing states to collect unauthorized fees.").

In this case, Plaintiff simply alleges that Sallie Mae contacted him, in writing and in person, after he had retained an attorney, and sent him a payment schedule (which does not appear to be unreasonable), in an attempt to collect the remaining balance of Plaintiff's loan. Under these regulations, Sallie Mae is required to contact Plaintiff, and there is nothing that prohibits contact even though the borrower is represented by counsel. *See* 34 C.F.R § 682.411(a) ("In the event of delinquency on an FFEL Program loan, the lender must engage in at least the collection efforts described in paragraphs (c) through (n) of this section . . . ."). Because these actions are permissible under the regulations, Plaintiff's state law causes of action based on Sallie Mae's collection conduct are in conflict with, and therefore are preempted by, the HEA.[11]

To the extent Plaintiff attempts to state a cause of action under the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1601 - 1700, for the alleged damage to his credit rating, Sallie Mae also argues that it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The FCRA governs consumer credit reporting practices. *See* 15 U.S.C. § 1601 ("It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against

---

[11] These include Plaintiff's WVCCPA claims and his intentional infliction of emotional distress claim.

inaccurate and unfair credit billing and credit card practices.").    Under the FCRA, various requirements are placed upon three types of actors: "(1) consumer reporting agencies, (2) users of consumer reports, and (3) the furnishers of information to consumer reporting agencies." *Gibbs v. SLM Corp.*, 336 F. Supp. 2d. 1, 11 (D. Mass. 2004) (citing *Vazquez-Garcia v. Trans Union De Puerto Rico,* 222 F. Supp. 2d 150, 153-54 (D.P.R. 2002)).   Plaintiff alleges that Sallie Mae is a furnisher of information because it provided information to others that negatively affected his credit report.  *See Jarrett v. Bank of America*, 421 F. Supp. 2d 1350, 1352 n.1 (D. Kan. 2006) (noting that "courts have defined the term as an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies").

The requirements placed on the actors are either enforced by appropriate government officials or private individuals and entities, depending on which statutes are implicated.  For example, § 1681s-2(a), which imposes duties upon furnishers of credit information to provide consumer reporting agencies with accurate information, is only enforceable by government officials.  *See* 15 U.S.C. § 1681s-2(d) ("Subsection (a) of this section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section.").

Unlike § 1681s-2(a), however, subsection (b) does not contain any limitation on the availability of remedies and has therefore been construed to provide a private right of action to consumers. *DiMezza v. First Bank Inc.*, 103 F. Supp. 2d 1296, (D.N.M. 2000); *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918 (N.D. Ill. 2000); *Vasquez-Garcia v. Trans Union de Puerto Rico*, 222 F. Supp. 2d 150, (D.P.R. 2002).[12]   Section 1681s-2(b) requires furnishers of information to

---

[12]  There is a split of authority on this issue, but at least one other court in the Fourth Circuit has held that the private cause of action under subsection (b) exists.  *See Ayers v. Equifax Info. Servs.*, No. 3:03-551, 2003 U.S. Dist. LEXIS 23271 (E.D. Va. 2003) (relying on another district court's opinion

investigate disputed credit information, but only after receiving notice of the dispute from a consumer reporting agency. Courts have found that the obligations under § 1681s-2(b) only attach when notice is given from a consumer reporting agency. *See Gibbs*, 336 F. Supp. 2d at 12 (recognizing that "courts have 'uniformly' concluded that § 2(b) provides a private cause of action only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information was disputed[]") (citations and internal quotations omitted)).

In this case, Plaintiff has not alleged any facts, which if proven, would result in liability on the part of Sallie Mae as a furnisher of information under § 1681s-2(b). Plaintiff merely asserts that Sallie Mae's "continued harassment and attempts to collect interest and late penalties directly from Plaintiff has adversely affected Plaintiff's credit rating . . . ." (Docket 1 ¶ 29.)   Accordingly, Plaintiff's § 1681s-2(b) claim is dismissed because he has not alleged that Sallie Mae received any notice of dispute from a credit reporting agency or that any of the information it was reporting was false. *See, e.g.*, *Gibbs*, 336 F. Supp. 2d at 12.

Finally, the Court recognizes that the Fair Debt Collection Practices Act (FDCPA) also provides consumers with certain protections from debt collectors' activities, *see* 15 U.S.C. §§ 1692b-92j, including communication with a consumer once the debt collector knows the consumer is represented by an attorney. *Id.* § 1692c(a)(2).  This statute defines a  "debt collector" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to

in *Johnson v. Experian Info. Solutions*, No. 02-523 (E.D. Va. 2003), which was appealed and affirmed for issues unrelated to this question, *Johnson v. MBNA America Bank, NA*, 357 F.3d 426 (4th Cir. 2004)).

19

be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph . . . .

*Id.* § 1692a(6).  The exclusion in clause (F) enumerates several circumstances under which an individual is not considered a debt collector, in particular, where a lawsuit "concerns a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(f).  "Thus, under § 1692a(6)(F)(iii), the classification of debt collector depends upon the status of a debt, rather than the type of collection activities used." *Alibrandi v. Fin. Outsourcing Servs.*, 333 F.3d 82, 86 (2d Cir. 2003) (noting that judicial decisions and regulations agree that "default does not occur until well after a debt becomes outstanding[]").  Because the FDCPA does not define "default", "[i]n cases involving student loan collections . . . courts have regularly imported a Federal Family Education Loan Program . . . definition of 'default' . . . ." *Id.* at 87 (citing 34 C.F.R. § 682.200(b) (1998); *Skerry v. Mass. Higher Educ. Assistance Corp.*, 73 F. Supp. 2d 47, 51 (D. Mass. 1999); *Pelfrey v. Educ. Credit Mgmt. Corp.*, 71 F. Supp. 2d 1161, 1180 (N.D. Ala. 1999)).  Under this definition, default is defined as "[t]he failure of a borrower . . . to make an installment payment when due, or to meet other terms of the promissory note, the Act, or regulations as applicable . . . provided that this failure persists for– 1) 270 days for a loan repayable in monthly installments . . . ." 34 C.F.R. § 682.200(b)(2007).

Using the exclusion and this definition of default, several courts have dismissed similar FDCPA claims brought by student loan debtors against Sallie Mae by holding that it was not a "debt collector" because the plaintiffs' loans were not in default at the time they were received by Sallie Mae. *See, e.g.*, *Johnson v. Sallie Mae Servicing Corp.*, 102 F. App'x 484 (7th Cir. 2004) (holding that Sallie Mae Servicing Corporation is not a "debt collector" under the FDCPA); *Gibbs*, 336 F. Supp. 2d at 10-14; *Seals*, 2004 WL 3314948, at *5 (dismissing a plaintiff's FDCPA claim against Sallie Mae because it was not a "debt collector").  Here, Plaintiff does not allege that his loans were in "default"

at the time Sallie Mae acquired them.  In fact, Plaintiff's complaint states that he obtained the loans from Sallie Mae in October 1980 and September 1981 -- well before he (or the Army) was obligated to pay.  (Docket 1 ¶ 11.)  Therefore, because the loans were not in default at the time Sallie Mae received them, Sallie Mae is not a debt collector, and he has no cause of action against it under the FDCPA.

b.       *Contract Claims and Injunctive Relief*

Plaintiff's contractual claim against Sallie Mae fails because Plaintiff does not allege any breach of the 1995 Agreement on behalf of Sallie Mae.  Plaintiff alleges that he signed an agreement, which calculated that he owed a total of $21,034.00, and he argues that he signed the agreement as an immediate attempt to refinance his home, and that he felt the Army was responsible to fulfill its commitment.  There is no legal or factual basis to find a breach of contract on behalf of Sallie Mae because Plaintiff does not allege that it failed to do something it promised to do.  *See Thomas v. Bd. of Educ.*, 383 S.E.2d 318, 322 (W. Va. 1989) ("When a promisor has undertaken to do a particular act and fails to do what he is contractually bound to do, a breach occurs.").  Moreover, there has been no allegation of assent or consideration to modify the agreement by the parties in order to discharge Plaintiff's duty to pay the additional amount.  *See Wheeling Downs Racing Ass'n v. W. Va. Sportservice*, 199 S.E.2d 308, 311 (W. Va. 1973) ("A modification of a contract requires the assent of both parties to the contract and mutual assent is as much a requisite element in effecting a contractual modification as it is in the initial creation of a contract."); syl. pt. 2, *W.L. Thaxton Constr. Co. v. O.K. Constr. Co.*, 295 S.E.2d 822 (W. Va. 1982) ("However, a written contract may be modified or its terms altered by a subsequent valid oral agreement, and this may be shown in a proper case. As a rule a consideration must be shown." ).  Thus, Plaintiff has no contractual claim against Sallie Mae.

Regarding Plaintiff's request for an order requiring Sallie Mae to cease its efforts to collect from Plaintiff, Plaintiff argues that Sallie Mae's acceptance of the $9,350.00 in 1999 from the Army acted as full payment of the original principal and therefore extinguished all other interest payments and late fees. He cites no law in support of this assertion. Furthermore, the facts, as alleged, do not support a finding of either a novation, where the Army would be liable to Sallie Mae, or an accord and satisfaction by Sallie Mae's acceptance of the $9,350.00 from the Army.

"Novation is generally defined as a mutual agreement among all parties concerned for discharge of a valid existing obligation by the substitution of a new binding obligation on the part of the debtor or another." Syl. pt. 2, *Perlick & Co. v. Lakeview Creditor's Trustee Comm'n*, 298 S.E.2d 228 (W. Va. 1982). In order to establish a novation, the following elements must be present: "(a) a previous valid obligation, (b) a consent by all parties to the new contract, (c) an abatement of the old contract and (d) a new contract which is valid and enforceable." *Id.* Here, Plaintiff has not alleged that the Army consented to become liable for the interest and penalties that are the subject of Plaintiff's 1995 Agreement with Sallie Mae. Because there are no facts alleged that establish the elements of a novation, Plaintiff's claim for injunctive relief on the grounds that the Army is liable to Sallie Mae, not him, is without merit.

Additionally, with respect to any argument that Sallie Mae's acceptance of the original loan amount from the Army was an accord and satisfaction, the West Virginia Supreme Court of Appeals stated in syllabus point one of *Charleston Urban Renewal Auth. v. Stanley*, 346 S.E.2d 740 (W. Va. 1985) that:

> To show an accord and satisfaction, the person asserting the defense must prove three elements: (1) Consideration to support an accord and satisfaction; (2) an offer of partial payment in full satisfaction of a disputed claim; and (3) acceptance of the partial payment by the creditor with knowledge that the debtor offered it only upon the

22

condition that the creditor accept the payment in full satisfaction of the disputed claim or not at all.

Plaintiff has not alleged facts sufficient to establish that an accord and satisfaction occurred. Specifically, he has failed to allege that Sallie Mae accepted the partial payment with knowledge that Plaintiff offered it, through the Army, only upon the condition that Sallie Mae accept the payment in full satisfaction of the disputed claim or not at all. *Id.* Therefore, any claim to an order preventing Sallie Mae from collecting from him on the basis that his obligation has been discharged is likewise without merit.

c.    *Negligence*

The elements of a negligence claim are well established.  Plaintiff is required to prove 1) that Sallie Mae owed him a legal duty; 2) that the duty was breached; 3) that Plaintiff was injured; and 4) that the injury was proximately caused by Sallie Mae's negligence. *See Rowe v. Sisters of Pallottine Missionary Soc'y*, 560 S.E.2d 491, 498 (W. Va. 2001). "In order to establish a prima facie case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff.  No action for negligence will lie without a duty broken." Syl. pt. 1, *Parsley v. Gen. Motors Acceptance Corp.*, 280 S.E.2d 703 (W. Va. 1981).

In his complaint, Plaintiff failed to allege the existence of a legal duty owed to him by Sallie Mae.  Although it is true that individuals and corporations alike owe a general duty of care to foreseeable plaintiffs, Plaintiff in this case has failed to allege a specific legal duty, and more importantly, has failed to allege that Sallie Mae did anything to breach that duty.  Plaintiff has not pointed to any authority that establishes a duty on behalf of a lender to contact a third-party and attempt to collect another's debt from that third-party.  Accordingly, any common law negligence claim based on Sallie Mae's handling of Plaintiff's loan is dismissed.

23

Furthermore, Plaintiff cannot establish a negligence claim on a theory of negligent credit reporting because such a claim is preempted by the FCRA.  In *Gibbs*, the court rejected a plaintiff's negligent reporting claim by citing 15 U.S.C. § 1681h(e), which provides that:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer.

Thus, although Plaintiff makes conclusory allegations that Sallie Mae acted willfully, intentionally, recklessly, maliciously, and egregiously, he provides no factual basis for those accusations and does not allege that any *false* information was furnished.[13]

### III. CONCLUSION

Unfortunately, because the Army was unable to locate Plaintiff to verify his loan in 1987, it failed to make a timely payment on the debt it contracted to pay in exchange for Plaintiff's military service.  However, Plaintiff pled no facts that would make it plausible to suggest that a reasonable inquiry at that time would not have discovered this fact and, although it may be harsh,[14] his contractual claims against the Army are no longer viable and a transfer to the appropriate court would be futile.  Moreover, he pled no facts to provide the Court with any basis to equitably toll the statute of limitations in his contractual action against the Army, and he has failed to meet his burden of showing that this Court has jurisdiction over his tort claims against the Army.  Additionally, based on the

---

[13]  There is no dispute that Plaintiff signed the 1995 Agreement stating he owed Sallie Mae $21,034.00.

[14]  *See Humble Oil & Ref. Co. v. Lane,* 165 S.E.2d 379, 383 (W. Va. 1969) ("Statutes of limitations are statutes of repose. Their object is to compel the exercise of a right of action within a reasonable time.").

allegations in the complaint, there is no legal or factual basis upon which Sallie Mae can be liable.

Therefore, for the reasons stated herein, the Motions to Dismiss of the Army and Sallie Mae are **GRANTED** [Docket 5 and Docket 7]. This Court will enter a judgment order this day implementing the rulings contained herein.

ENTER:          December 7, 2007

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE